IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

HOLDEN RANSOME                              :
                                            :
    v.                                      :   Civil Action No. CCB-03-2532
                                            :
JOANNE B. BARNHART, COMMISSIONER            :
SOCIAL SECURITY ADMINISTRATION,             :
ET AL.                                      :

...o0o...

## MEMORANDUM

Now pending before the court is the defendants' motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), 12(b)(1), or, in the alternative, for summary judgment under Fed. R.Civ. P. 56. The issues in this motion have been fully briefed and no hearing is necessary. See Local Rule 105.6. For the reasons stated below, the defendants' motion for summary judgment will be granted.

## BACKGROUND

Holden Ransome ("Ransome") has been employed as a Teleservice Representative ("TSR") in Unit 1B, Section 1 at the Social Security Administration ("the agency") Teleservice Center ("TSC") in Baltimore since 1989. (Defs.' Mot. to Dismiss, Ransome Aff., Ex. 5 at ¶ 1.) TSRs are responsible for assisting customers with questions relating to all programs administered by the agency by telephone or other correspondence. (Id., Job Description, Ex. 4.) Ransome is "legally blind" as she has been totally blind in one eye since birth and has low vision in the other eye. (Pl.'s Compl. at ¶ 13.) TSC employs twenty visually impaired individuals, five of whom are in Ransome's section. (Defs.' Mot. to Dismiss, Hairston Aff., Ex. 7 at ¶ 3; Cooper-Solomon Aff., Ex. 8 at ¶ 2.) Of the five visually impaired

employees in her section, three are totally blind and Ransome and one other employee are "legally blind." (Id.) Ransome is the only visually impaired employee in her unit. (Id., Butler Aff., Ex. 6 at ¶ 5.)

Around September 2000, Ransome asked to have a different reader assigned to assist her because Phyliss Hall, her reader from 1992 until about February 2001, was only available to read to Ransome for one hour a day. (Defs.' Mot. to Dismiss, Ransome Aff., Ex. 5 at ¶ 5.) Ransome asked to have a full-time reader. Ransome asserts that she received a letter from Mary Butler ("Butler"), the supervisor of her unit, denying the request due to budgetary constraints. In March 2001, Ransome was assigned another reader whom she shared with another employee. Ransome asserts that the new reader worked with her for a little more than an hour per day and quit after a month. When she was assigned a new reader in October 2001 for half-time, the new reader also performed clerical duties for the unit and would only read to Ransome for one hour each day. Ransome further alleges that her half-time reader could never accompany her to training sessions on Friday afternoons and was not available when there were was a high call volume. (Id.) Ransome complains that another employee, who is white and totally blind, has a full-time reader and that Ransome is even more in need of a full-time reader than that individual because she cannot read braille. (Pl.'s Opp'n Mem., Ransome Aff., Ex. 5 at ¶ 3.)

However, Ransome does not provide the name of an employee with this arrangement or any other details. The agency maintains that no visually impaired employee has a full-time reader. (Defs.' Mot. to Dismiss, Cooper-Solomon Aff., Ex. 8 at ¶ 5.) In addition, the agency contends that Ransome does not need a full-time reader because the special equipment provided to her obviates the need for a full-time reader (Id., Hairston Aff., Ex. 7 at ¶ 6; id., Cooper-Solomon Aff., Ex. 8 at ¶ 5.) Finally, the

2

agency asserts that Ransome refused the services of the reader assigned to her because she was only part-time (Id., Butler Aff., Ex. 6 at ¶ 5) and because Ransome said she no longer needed a reader. ((Id., Hairston Aff., Ex. 7 at ¶ 6.) Ransome denies refusing the services of a full-time or part-time reader. (Pl.'s Opp'n Mem., Ransome Aff. at ¶ 5.) Either way, the agency states that a reader is available for Ransome if she chooses to have one assist her. (Defs.' Mot. to Dismiss, Hairston Aff., Ex. 7 at ¶ 6.)                                    When Ransome still had the assistance of a reader, she was experiencing problems with mail pick-up because her reader was supposed to finalize the mail before it was sent out but often let it back-up in Ransome's outgoing mail slot. (Id., Ransome Aff, Ex. 5 at ¶ 6.) This situation led to some clashes with Butler. Ransome alleges that during one such confrontation with Butler, Butler spoke and pointed her pen in Ransome's face. (Id.) Butler admits that she "talks with her hands," but denies poking her finger or pen in Ransome's face. (Id., Butler Aff., Ex. 6 at ¶ 8.) The underlying mail situation was resolved. (Id., Ransome Aff., Ex. 5 at ¶ 6.)

In May and June of 2001, Ransome requested a reassignment and relocation from Butler.[1] (Id., Ransome Aff., Ex. 5 at ¶ 4.) Ransome and her union representative met with Carolyn Cooper-Solomon, the Deputy Director of the TSC, who explained that there was currently no place to move

---

[1] Butler recalls Ransome asking to be placed into another position that did not require a computer. (Defs.' Mot. to Dismiss, Butler Aff., Ex. 6 at ¶ 3.) Butler alleges that she informed Ransome to apply for any vacant positions that are announced. Butler explains that she had no authority to reassign employees and knew of no position that did not require a computer. (Id.) Butler also maintains that Ransome did not like working for her since Butler treated her the same way she treated all other employees. (Id. at ¶ 4.) Cooper-Solomon and Eleanor Hairston ("Hairston"), the manager of section 1 at the TSC, maintain that Ransome has had problems with previous supervisors as well. (Id., Cooper-Solomon Aff., Ex. 8 at ¶ 3; id, Hairston Aff., Ex. 7 at ¶ 4.) Ransome denies this and states that she considers such statements retaliatory. (Opp'n Mem. at 4.)

3

Ransome's workstation, which required extra space because of the special equipment provided to her to help her perform her work. (Id., Ex. 8 at ¶ 3.) However, Cooper-Solomon alleges that she informed Ransome and her representative that Ransome's workstation could be moved into another unit when TSC moved into different office space in June 2002. Cooper-Solomon maintains that Ransome refused that offer. (Id.) Though she denies refusing an offer to relocate, Ransome admits that during settlement discussions, such an offer was made, contingent on her agreement to drop her EEO complaints, but she did not do so. (Pl.'s Opp'n Mem., Ransome Aff. at ¶ 6.)

Last, Ransome contends that her special equipment is faulty, and more so than that of the other legally blind people in her unit. (Id., Ransome Aff., Ex. 5 at ¶ 7.) She says she learned that her equipment is incompatible with her computer and forces it to shut down often. (Opp'n Mem. at 3.) Ransome attributes some of this to her age, stating that management does not want to spend money on newer and better equipment because she is at retirement age. (Defs.' Mot. to Dismiss, Ransome Aff., Ex. 5 at ¶ 7.) She maintains that she received satisfactory or better than satisfactory performance evaluations until she complained about her faulty equipment. (Compl. at ¶ 14.)

The agency asserts that on March 14, 2002, Ransome's supervisors arranged for the Maryland State Department of Education, Division of Rehabilitation Services ("DRS"), Workforce and Technology Center to test Ransome to evaluate her skills and abilities. (Id., Hairston emails, Exs. 10, 11.) The agency also alleges that on April 3, 2002, a DRS worksite coordinator evaluated Ransome's workstation. (Id., Hairston Aff., Ex. 7 at ¶ 5; Id., Cooper-Solomon Aff., Ex. 8 at ¶ 4; Id., Hairston emails, Exs. 10, 11.) According to the agency, the DRS concluded that the problem was not the machinery but that Ransome was not retaining the instructions for operating the equipment. (Id.; id.,

4

Hairston Letter, Ex. 12 at ¶ 2.) The agency claims that it offered Ransome refresher courses to help her handle her special equipment. (Id., Hairston Aff., Ex. 7 at ¶ 5; Id., Cooper-Solomon Aff., Ex. 8 at ¶ 4; Id., Hairston email, Ex. 10.) Nonetheless, Ransome denies undergoing tests by the DRS. (Opp'n Mem. at 3.) She also claims that DRS denies discussing her cognitive ability with the agency. (Id.)

On June 29, 2001, Ransome invoked the administrative process, submitting a complaint alleging unlawful discrimination on the basis of age, disability, and reprisal. (Id., EEO Counseling Report, Ex. 2.) The agency accepted her claims for investigation on December 19, 2001. Ransome later withdrew from the administrative EEO process and filed her complaint in this court on September 2, 2003, claiming jurisdiction under the Age Discrimination in Employment Act of 1967 ("ADEA"), Section 501 of the Rehabilitation Act, and federal question jurisdiction under 28 U.S.C. § 1331.

## ANALYSIS

The defendants have moved to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), 12(b)(1), or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A court considers only the pleadings when deciding a Rule 12(b)(6) motion. Where the parties present matters outside of the pleadings and the court considers those matters, as here, the motion is treated as one for summary judgment. See Fed. R. Civ. P. 12(b); Gadsby by Gadsby v. Grasmick, 109 F.3d 940, 949 (4th Cir. 1997); Paukstis v. Kenwood Golf & Country Club, Inc., 241 F. Supp. 2d 551, 556 (D. Md. 2003). The parties, however, "shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b). The requirement of "reasonable opportunity" means that all parties must be provided with notice that a Rule 12(b)(6) motion may be treated as a motion for summary judgment, which is satisfied when a party is "aware that material

5

outside the pleadings is before the court." Gay v. Wall, 761 F.2d 175, 177 (4th Cir. 1985); see also Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 261 (4th Cir.1998) (commenting that a court has no obligation "to notify parties of the obvious").

Ransome had adequate notice that the defendants' motion might be treated as one for summary judgment. The motion's alternative caption and attached materials are in themselves sufficient indicia. See Laughlin, 149 F.3d at 260-61. Moreover, Ransome responded to the motion by including her own affidavit and arguing that a genuine dispute exists as to material facts. If Ransome had thought that further discovery was necessary to adequately oppose summary judgment, Rule 56(f) obligated her to not only indicate her need for discovery but to set out reasons for her need in an affidavit, which she has not done. See Fed. R. Civ. P. 56(f); see also Laughlin, 149 F.3d at 261 (refusing to overturn district court's grant of summary judgment on assertions of inadequate discovery when the nonmoving party failed to make an appropriate motion under Rule 56(f)). Therefore, the court will consider the affidavits and additional materials submitted by the parties and will treat the motion of the defendants as a motion for summary judgment.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to . . . the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witness' credibility," Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 644-45 (4th Cir. 2002), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." Bouchat, 346 F.3d at 526 (internal quotation marks omitted)(quoting Drewitt v. Pratt, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24(1986)).

Ransome alleges violations of the ADEA and the Rehabilitation Act. By statute, the Rehabilitation Act incorporates the remedies, procedures, and rights of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq. See 29 U.S.C. §794a(a)(1). Under Title VII, and therefore the Rehabilitation Act as well, supervisors are not liable in their individual capacities for violations of the statute. See Lissau v. Southern Food Serv., Inc., 159 F.3d 177, 180-81 (4th Cir. 1998); Arbabi v. Fred Meyers, Inc., 205 F.Supp.2d 462, 464 (D.Md. 2002). The same is true for the ADEA. Birkbeck v. Marvel Lighting Corp., 30 F.3d 507, 510-11 (4th Cir. 1994). Thus, the Commissioner of the agency is the only appropriate defendant for Ransome's ADEA and Rehabilitation Act claims. See 42 U.S.C. §2000e-16(c).

In the absence of direct evidence of unlawful discrimination on the basis of age, disability, or reprisal, Ransome may proceed under the burden-shifting scheme of McDonnell Douglas Corp. v.

7

Green, 411 U.S. 792, 802, 805 (1973).  To build a prima facie case of discrimination based on age or disability, Ransome must produce evidence to show she: (1) is a member of a protected class; (2) was performing her duties in a satisfactory manner; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated individuals outside of her protected class. Nichols v. Harford County Bd. of Educ., 189 F.Supp.2d 325, 340 (D.Md. 2002).  This initial showing requires Ransome to assemble "a set of facts which would enable the fact-finder to conclude with reasonable probability that *in the absence of any further explanation,* the adverse employment action was the product of age [or disability] discrimination." Mitchell v. Data General Corp., 12 F.3d 1310, 1315 (4th Cir.1993) (alteration in original).

Ransome has not satisfied her burden of demonstrating a prima facie claim for age or disability discrimination.  Though she belongs to the protected class of individuals over the age of 40 and has a visual impairment, she fails to show any adverse employment action she suffered or any similarly situated colleagues outside of her protective class who fared better than she did.  Ransome complains that: (1) her requests for a full-time reader and reassignment to another unit were denied; (2) she was told by a supervisor that she did not have the cognitive abilities to do her job; (3) she was given weaker performance evaluations; and (4) on one occasion, her supervisor pointed an object in Ransome's face.  None of these complaints adversely affected any term, condition, or benefit of her employment. See Von Gunten v. Maryland, 243 F.3d 858, 866, 868-69 (4th Cir. 2001).  Ransome was not fired, demoted, or caused a decrease in pay or benefits or a loss of job title.  Though her request for reassignment was temporarily denied due to physical constraints, the agency promised to reassign Ransome once TSR moved its offices.  In addition, a reader is available to help Ransome, though full-

8

time assistance was determined to be unnecessary. Ransome's lower performance evaluations are also not considered an adverse employment action as they have not altered her employment situation. Allen v. Rumsfeld, 273 F.Supp.2d 695, 706 (D.Md. 2003)(citing Thompson v. Potomac Electric Power Co., 312 F.3d 645, 652 (4th Cir. 2002). Finally, the one-time pen-pointing incident is not sufficient to be considered an adverse employment action or harassment.

In the same vein, Ransome has not produced any evidence indicating any retaliatory discrimination against her. To establish retaliatory discrimination, Ransome must prove she: (1) engaged in a prior protected activity; (2) was subjected to an adverse employment action; and (3) a causal connection existed between the protected activity and adverse action. Pulley v. KPMG Consulting, Inc. 348 F.Supp.2d 388, 396 (D.Md. 2004)(citing Munday v. Waste Mgmt. of N. Am., Inc., 126 F.3d 239, 242 (4th Cir.1997). Ransome does not allege any engagement in a prior protected activity or specify any adverse employment action she suffered because of her prior activity. In her complaint, Ransome asserts that after she had meetings and wrote certain memoranda about her faulty equipment, her supervisors "harassed" her. As she has not produced any evidence on the subject or provided a factual basis for her legal conclusion, Ransome has not stated a valid discriminatory retaliation claim. Baltimore-Clark v. Kinko's Inc., 270 F.Supp.2d 695, 698 (D.Md. 2003)(citations omitted).

Ransome has also not shown that the agency failed to reasonably accommodate her in violation of the Rehabilitation Act. Under the Rehabilitation Act, an employer may not discriminate against a

9

qualified individual with a disability because of the disability. 42 U.S.C. §12112(a)[2]. Discrimination includes not making reasonable accommodations for the disability unless the accommodation would "impose an undue hardship on the operation of the business." 42 U.S.C. §12112(b)(5)(A). Even if Ransome could establish that she was a qualified individual with a disability, she has failed to show that the agency did not reasonably accommodate her. The agency gave her special equipment, made readers available to assist her, and provided extra time for her to review updated information. The agency was not required to provide Ransome with the exact accommodations that she requested or the best accommodations, as long as what they provided was reasonable. Scott v. Montgomery County Government, 164 F.Supp.2d 502, 508 -509 (D.Md. 2001). Ransome's supervisors did not just rely on their own conclusions but sought the advice of independent disability experts who evaluated Ransome. The DRS evaluation concluded that Ransome was experiencing difficulties because of her cognitive limitations and that a full-time reader or different equipment would not improve the situation. Ransome's request to be reassigned was not based on any difficulties she encountered because of her disability but because she disliked Butler. Thus, the agency's determination not to provide different accommodations for Ransome was reasonable.

Ransome's claim against the federal government for defamation fails because the government is immune from suit unless it expressly waives its immunity. The United States has not consented to suit under Maryland tort law. The Federal Tort Claims Act (FTCA) also does not waive the United States' sovereign immunity for claims arising out of libel, slander, or misrepresentation. See 28 U.S.C.

---

[2]The Rehabilitation Act incorporates the Americans with Disabilities Act (ADA) provisions relating to disability discrimination. See 29 U.S.C. §791(g).

10

§2680(h); Siegert v. Gilley, 500 U.S. 226, 234 (1991).  Thus, Ransome's defamation claim is inactionable.

Last, Ransome has failed to assert due process violations under the Fifth or Fourteenth Amendments.  Both the Fifth and Fourteenth Amendments of the U.S. Constitution prohibit the deprivation of a person's life, liberty, or property without due process of law.  The Fourteenth Amendment also provides for the equal protection of the laws.  As Ransome has failed to state a claim that encompasses the deprivation of interests protected by the Fifth and Fourteenth Amendments, there is no need to reach her due process and equal protection claims.

For all the reasons stated above, the defendants' motion for summary judgment will be granted.

A separate order follows.

    May 5, 2005
Date

/s/
Catherine C. Blake
United States District Judge